STATE v. PATRICK HOGAN, alias COURTNEY MURRAY, alias LARRY WAHL, alias JOHN BAKER, alias LARRY BAKER, alias PADDY CLIFFORD, Appellant.—No. 38428.—177 S. W. (2d) 465.

Dvision Two, February 7, 1944.

*James T. Riley* and *S. W. James, Jr.,* for appellant.

380

*Roy McKittrick*, Attorney General, and *John S. Phillips*, Assistant Attorney General, for respondent; *Tyre W. Burton* of counsel.

TIPTON, J.—The appellant was convicted of murder in the second degree in the circuit court of St. Louis County, Missouri, and his punishment assessed at imprisonment for twenty years in the State penitentiary.

In his assignment of errors, appellant contends that his demurrer at the close of all the evidence should be sustained. The evi-

dence on behalf of the State shows that Charles Bailey, the deceased, Thomas Whalen, and appellant went to Dudley's Tourist Cabins about 10:30 P. M. on June 24, 1941, and remained there about an hour. They arrived there in a Chrysler Sedan and left in the same automobile. The license tag number shows that the license was issued to Thomas Whalen, who was, also, charged with the murder of Bailey, but who, at the time of this trial, had not been apprehended. About 12:15 A. M. of June 25, 1941, the State Highway Patrol was notified that there was a body lying upon the highway near the Dudley Tourist Cabins. A patrolman found the body at the described location, and the body was identified as Charles Bailey. The testimony was that he came to his death by having been shot. A car of the same description that Bailey, Whalen, and appellant used when they went to the Dudley Tourist Cabins, and with the same license numbers was found on Ashley Road near the intersection of that road with the St. Charles Rock Road. It had been burned. Roy Johnson testified that appellant was his brother-in-law, and lived at the witness' home; that appellant told the witness shortly after Bailey was killed, ''I have got to get out of here;'' and he, also, testified that the burned car looked like the car appellant had in witness' driveway at his home.

George Madden testified he knew the appellant and that on June 25, 1941, appellant telephoned him to meet him at Gumbo Inn, which he did. He testified that the appellant asked him if the police were looking for him, to which the witness replied that he did not know, but stated that they were looking for the man who killed Bailey. Then the appellant said, ''I guess you know who it was.'' Madden stated that he did not, to which appellant replied, ''I guess it was me.'' Appellant further stated to Madden that he would have killed Whalen too, but that ''he didn't have any more bullets.'' He, also, told Madden that if there were any more police looking for him to let him know.

In testifying, appellant denied making the statement to Madden and denied that he killed Bailey.

This evidence shows that appellant intentionally killed the deceased with a deadly weapon. It, therefore, raises the presumption of murder in the second degree. State v. Page, 130 S. W. (2d) 520; State v. Majors, 329 Mo. 148, 44 S. W. (2d) 163. The demurrer to the evidence was properly overruled, as the evidence is sufficient to sustain the verdict of second degree murder.

 The appellant contends that the ''court erred in permitting the State to cross examine its witness, Roy Johnson, without first showing that he was a hostile witness and without any foundation being laid to show entrapment, or surprise.''

Roy Johnson was placed upon the witness stand by the State. He testified that he worked at night for the Globe Printing Company, that the appellant was his brother-in-law, and he resided at the witness' home when in St. Louis. He testified that on June 24, 1941, he went to

work about 6:30 P. M. and returned home a little after 4 A. M.; that appellant was asleep on the couch when he returned home; that there was an automobile parked in his driveway; that he got out of bed about 2 P. M.; and that he could not say for sure whether the appellant was at home when he arose. He further testified that he could not say for sure that the burned automobile was the same that was in his driveway or not, but was similar. He was then asked by the Prosecuting Attorney: ''Q. Did you have any conversation with this defendant following that?'' ''A. He used to talk to me and kid me about taking a vacation or something. Wanted to know if I wanted to take a trip to see my father or something like that.''

''Mr. Wallach: Your Honor, I plead surprise and ask leave to cross-examine this witness.''

''The Court: I think so under the circumstances. You may.''
To this ruling of the court the appellant excepted.

Johnson then was subjected to a rigid cross-examination by the Prosecuting Attorney.

He was asked, among other things, if the appellant said to him, ''My God, I have got to get out of here.'' Also, he was asked the question about the automobile. In fact, the Prosecuting Attorney was really testifying. He was then asked if he did not make certain statements to men in the sheriff's office, which he denied doing. Even the cross-examination failed to disclose that Johnson was a hostile witness. For instance, he admitted appellant stated that ''I have to get out of here,'' but denied he said, ''My God, I have got to get out of here.'' He did not admit that the burned car was the same car that was in his driveway, but did state that it was similar, which was what he testified to before he was cross-examined. The State called Harry Neubold, a deputy sheriff of St. Louis County, for the purpose of impeaching Johnson.

It is to be remembered that Johnson was not a party to this suit. He, therefore, could not be an adverse party.

''We held in the case of State v. Bowen, 263 Mo. loc. cit. 280, 172 S. W. 367, that it is not sufficient to warrant a party who puts a witness on the stand, in impeaching such witness (by showing extra-judicial statements contradictory of the testimony of the witness upon the stand), that the witness merely fails or refuses to tell the facts which he had theretofore related extrajudicially or fails to tell all such facts, but, in order to warrant impeachment in the mode stated, the witness must go further, and by relating wholly contradictory facts become in effect a witness for the adverse side. In the latter event the party calling the witness is entitled to show that he was misled and entrapped by the witness' former words and attitude into calling the adverse witness. He is not so entitled; however, when the witness merely fails to relate facts which the party offering him had been led to believe he would relate.'' State v. Drummins, 274 Mo. 632, 204 S. W. 271.

To the same effect, see Burnam v. Chicago Great Western R. Co., 340 Mo. 25, 100 S. W. (2d) 858; Woelfle v. Connecticut Mutual Life Ins. Co., 234 Mo. App. 135, 112 S. W. (2d) 865; Crabtree v. Kurn, 351 Mo. 628, 173 S. W. (2d) 871.

We think the trial court abused its discretion in permitting the cross-examination of Johnson, and that such was prejudicial to appellant.

Appellant, also, contends that the giving of instruction No. 8 was error. This instruction dealt with statements made by the appellant. Appellant now contends that this instruction was a comment on the evidence. Respondent contends that appellant's motion for a new trial does not make such a contention.

Since the case must be reversed and remanded, we will not decide the point. However, we will call the State's attention to our cases of State v. Duncan, 336 Mo. 600, 80 S. W. (2d) 147; State v. Robertson, ▮ 351 Mo. 159, 171 S. W. (2d) 718; and State v. Talbert, 351 Mo. 791, 174 S. W. (2d) 144.

It follows that the judgment of the trial court should be reversed and the cause remanded. It is so ordered. All concur.