STATE of Missouri, Respondent,

v.

James Lloyd McWILLIAMS, Jr., Appellant.

No. 47576.

Supreme Court of Missouri,

Division No. 2.

Feb. 8, 1960.

No attorney of record for appellant.

John M. Dalton, Atty. Gen., Hugh P. Williamson, Asst. Atty. Gen., for respondent.

BARRETT, Commissioner.

The information, upon which the appellant McWilliams was convicted, charged that on October 18, 1958, he feloniously and with intent to cheat and defraud gave Cornelius A. Mundel a check for $50 drawn upon a bank in which he knew he had no funds. V.A.M.S. § 561.450. A jury found McWilliams guilty of the offense charged and, in addition, the jury found prior felony convictions alleged under the second-offender statute (V.A.M.S. § 556.280, subd. 2) and accordingly assessed the maximum mandatory punishment of seven years' imprisonment.

Mr. Mundel operated a gasoline service station at 6106 Michigan Avenue and the appellant, McWilliams, lived in the neighborhood, at 5819 Michigan. Between the dates of October 11 and October 20, 1958, McWilliams gave Mr. Mundel five checks, totaling $110.00. On October 11 McWilliams purchased antifreeze and gasoline and had the service of an oil change and lubrication for his automobile, the total charges were $11.76. When the service

was completed McWilliams "asked me if I wanted to cash a check." Upon discovering that McWilliams lived in the neighborhood Mundel "accepted" his check in the sum of $15 and gave him the difference in .cash, $3.24. Subsequently Mundel cashed or accepted for cash and merchandise four other checks, including the one for $50 on October 18. When three of the checks did not clear Mr. Mundel called the appellant and had him come to his place of business where they discussed the checks. On October 28 Mr. Mundel turned all five checks over to the police.

■ In the opening statement, in its proof and in the argument the prosecuting attorney proved and frequently referred to the four other checks, two of them prior to October 18 and two after that date. In his motion for a new trial there are several assignments of error directed to the references and proof of the other checks and one complaint that one of the state's witnesses, a policeman, insisted on referring to them as "bogus checks." It has been said that it is not proper in a false pretense case for the state's attorney to repeatedly refer to "bum checks" (State v. Eudaly, Mo., 188 S.W. 110, 112), but the statute under which the defendant was tried and convicted uses the words "bogus check" and in the circumstances it may not be said that the policeman's references entitled the appellant to a new trial. One of the essential elements of the offense is the intent with which the check was given, that is, "the intent to cheat and defraud" (V.A.M.S. § 561.450) and, subject to certain limitations, proof of other checks or similar transactions is admissible upon that issue. State v. Hartman, 364 Mo. 1109, 273 S.W.2d 198; 22 Am.Jur., Sec. 109, p. 506.

■ Also in the opening statement, in its proof and throughout the trial there were repeated references to the appellant's prior convictions. It turned out that the three prior convictions were pleas of guilty, all on the same day, to three charges of obtaining money by means of "bogus checks." The appellant made several objections to the proof of the prior convictions but his principal complaint is that at the beginning of the trial, during the state's opening statement, appellant's counsel offered to "stipulate as to the existence and validity of the prior convictions in order that they may be kept out of this trial" and therefore he urges that it was improper for the state to nevertheless prove the prior convictions, read the records to the jury and constantly refer to the fact. Some of his objections were sustained, as when state's counsel said, "I think they are important in formulating an evaluation of what his intent was when he gave these five checks." But, without detailing all the instances, it must be said that the state made the maximum use of the prior convictions. It was the appellant's misfortune to be tried in February 1959; had he been tried a few months later his prior convictions could not have been used against him as they were in this trial. Compare V.A.M.S. § 556.280 and Laws of Mo.1959, p. ——. But under the second-offense statute in force in February 1959, notwithstanding the appellant's admissions or offers to stipulate and notwithstanding its overemphasis, the state had the right to plead and prove the prior offense or offenses. State v. Bresse, 326 Mo. 885, 894–895, 33 S.W.2d 919, 922–923; annotation 144 A.L.R. 240, 246.

■ And so too of the defendant's proof of restitution: On the first day of the trial and after the jury had been empaneled Mrs. McWilliams, accompanied by her husband's lawyers, went to Mr. Mundel's home and gave him $102.00 in cash and so he received pay for all the checks except eight dollars. There is some analogy here and in the defendant's returning mules claimed to have been obtained by false pretenses (State v. Mullins, 292 Mo. 44, 237 S.W. 502), but generally, whether there has been a false pretense is determined as of the time the pretense is made

and the prosecuting witness parts with his property (State v. Richardson, Mo., 228 S.W. 789) and, in the absence of a statute, restitution is not a defense. State v. Cooper, 85 Mo. 256; 22 Am.Jur., §§ 61, 69, pp. 476, 480; 35 C.J.S. False Pretenses §§ 21, 37, pp. 661, 680; annotations 35 A. L.R. 344, 358; 35 A.L.R. 375, 391; 95 A. L.R. 486, 501.

■ Several of the appellant's assignments of error are directed to given instructions 1, 2 and 3, in part it is urged that they assume "intent to cheat and defraud," that they describe the offense without regard "to the intent of defendant" and unduly emphasize the giving of the check "without regard to the intent of defendant." It is not necessary to consider whether the instructions are erroneous in these particular respects, it may be said, as indicated, that from the state's evidence the jury could find all the elements of the offense, including the appellant's "intent to cheat and defraud." The state's proof did show, in addition to restitution, that from the beginning Mr. Mundel was anxious to get the money rather than to prosecute the appellant. As to calling the appellant and talking to him Mr. Mundel said, "He never evaded me, I will say that," or "Any time I talked to him he never refused." From the beginning, he said, McWilliams came down several times and "told me he would make the checks good." He says that McWilliams admitted that he knew he had no money in the bank "but that his brother was supposed to put some money in the bank."

■ In connection with all the evidence and the principal instructions the defendant offered and the court refused to give instructions A, B and C. These instructions dealt in various ways with the subject of intent. To illustrate, instruction B hypothesized that "it is not sufficient to convict defendant unless said check was given with the intent to cheat and defraud Cornelius Mundel of his money and property, and if you find from the evidence that at the time said check was given by defendant to Cornelius Mundel defendant had no intention to cheat or defraud Cornelius Mundel, then defendant is not guilty, * * *." The state urges that the matters hypothesized in instructions A, B and C were covered by other instructions and therefore the court did not err in refusing to give the offered instructions. It may be that in general other instructions covered these matters, from the state's standpoint, but instructions A, B and C were designed to present these matters conversely or affirmatively from the defendant's standpoint. They were not the converse of mere cautionary instructions or an instruction dealing with reasonable doubt (State v. Larkin, 250 Mo. 218, 157 S.W. 600, 46 L.R.A.,N.S., 13; State v. Hinojosa, Mo., 242 S.W2d 1), they were the affirmative conversely of the state's principal or main instructions. 23 C.J.S. Criminal Law § 1190, pp. 734–736. "We have uniformly held that where a defendant in a criminal case formulates and asks an instruction that correctly declares the law which is the converse of the state's principal instructions, it is the duty of the trial court to give the same. And it is reversible error to refuse such converse instruction, unless the state's instructions clearly submit the converse of the facts and issues upon which convictions are authorized." State v. Ledbetter, 332 Mo. 225, 228, 58 S.W.2d 453, 454; State v. Stewart, Mo., 29 S.W.2d 120; State v. Fraley, 342 Mo. 442, 116 S.W.2d 17; State v. Chevlin, Mo., 284 S.W.2d 563, 567. The instructions given by the court may have abstractly covered the subject of intent but the defendant was entitled to a factual, affirmative converse hypothesization which is not to be found in the instructions given. For the reason indicated the judgment is reversed and the cause remanded.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.